LAW OFFICE OF CLAUDIA MEDINA
Claudia Medina (SBN 249139)
claudia@cmedinalawoffice.com
811 Wilshire Boulevard, 17th Floor
Los Angeles, CA 90017
Tel.:   (213) 269-4001

HOUSING RIGHTS CENTER
Zachary Frederick (SBN 333738)
zfrederick@housingrightscenter.org
Rodney Leggett (SBN 332119)
rleggett@housingrightscenter.org
Javier Beltran (SBN 240416)
jbeltran@housingrightscenter.org
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Tel:   (949) 398-8080

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
Post Office Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, INC. d/b/a HOUSING RIGHTS CENTER, a California nonprofit corporation; ALMA ANGEL; MIGUEL PINTO; MARGARITA AHUMADA; MARIA TZUNUN; JOSE ANTONIO JUAREZ; SARA BOLAÑOS; ERMELINDO JUAREZ LOPEZ; EDUARDO JUAREZ; ALVARO ISIDRO; ROSA LILY PINEDA; FRANCIS YAQUI; MARBARITA ORTEGA; REBECA SANCHEZ; TERESA MORALES; MARCELA APARICIO; and DONALDO JIMENEZ,** | **No.** **COMPLAINT** |

Plaintiffs,

vs.

K3 HOLDINGS LLC, a Delaware limited liability company; K3 MANAGER LLC, a Delaware limited liability company; WESTERN 19 LLC, a Delaware limited liability company; OXFORD 19 LLC, a Delaware limited liability company; KENMORE 20 LLC, a Delaware limited liability company; MARIPOSA 20 LLC, a Delaware limited liability company; AVE 55 19 LLC, a Delaware limited liability company, NATHAN KADISHA; MICHAEL KADISHA; and ANGEL ESCOBAR,

Defendants.

1.    By this complaint, plaintiffs – Housing Rights Center and tenants – sue defendants – owners, operators, and managers of multifamily dwellings in the Koreatown and Highland Park neighborhoods of Los Angeles – for violations of the federal Fair Housing Act and related state and local laws.

## I . JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under the Fair Housing Act, 42 U.S.C. § 3613(a) and supplemental jurisdiction over plaintiffs' state law claim under 28 U.S.C. § 1367 because those state law claims are related to plaintiffs' federal law claim and arise out of a common nucleus of related facts forming part of the same case or controversy under Article III of the United States Constitution.

3.    Venue is proper in this district under 28 U.S.C. § 1391(b) because all events giving rise to this complaint occurred in this district.

## II.  PARTIES

### A.  Plaintiffs

4.      Plaintiff Southern California Housing Rights Center ("Housing Rights Center" or "HRC") is one of the oldest fair housing organizations in the country. It is a private, nonprofit organization formed under the laws of the State of California with its principal place of business in Los Angeles. Its mission is to actively support and promote fair housing through education, advocacy and enforcement. HRC works to identify barriers to fair housing in, among other places, the City of Los Angeles, and seeks to counteract and eliminate discriminatory housing practices. It is engaged in several different activities to further its mission of promoting equal housing opportunities including: an outreach and education program for landlords, tenants, nonprofit organizations and governments regarding fair housing; training and certification programs for housing industry professionals; tenant and landlord counseling regarding rights and responsibilities under state and local housing laws; fair housing counseling regarding rights and responsibilities under federal and state fair housing laws; research regarding housing discrimination in the community; and investigation of housing discrimination complaints, including fact-finding investigations, mediation, conciliation, and enforcement of fair housing laws.

5.      Plaintiff Alma Angel, 45, has rented and occupied Unit 117 in the Avenue 55 Apartments since 1997. She is Latinx; her primary language is Spanish. The members of her household span in age between 17 and 45; one member of her household is a minor child with disabilities. The household is low-income.

6.      Plaintiff Miguel Pinto, 38, has rented and occupied Unit 106 in the Avenue 55 Apartments since 2016. He is Latinx; his primary language is Spanish. His former roommate, a person with disabilities, had lived in that unit for more than 40 years. The household has always been low-income.

7.      Plaintiff Margarita Ahumada, 45, has rented and occupied Unit 110 in the Avenue 55 Apartments since 1998. She is Latinx; her primary language is Spanish. The members of her household span in age from 14 to 45; two are minor children, and one minor child has a disability. The household is low-income.

8.      Plaintiff Maria Tzunun, 73, has rented and occupied Unit 110 in the 941 Kenmore Building since 2010. She is Latinx; her primary language is Spanish. The members of her household span in age between 28 and 73; one member of her household is disabled. The household is low-income.

9.      Plaintiff Jose Antonio Juarez, 65, has rented and occupied Unit 203 in the 941 Kenmore Apartments since 1994. He is Latinx; his primary language is Spanish. The members of his household span in age between 58 and 65. The household is low-income.

10.     Plaintiff Sara Bolaños, 49, has rented and occupied Unit 205 in the 941 Kenmore Apartments since 1996. She is Latinx; her primary language is Zapotec. The members of her household span in age between 16 and 49; one member of her household is a minor child. The household is low-income.

11.     Plaintiff Ermelindo Juarez Lopez, 35, has rented and occupied Unit 4 in the 975 South  Oxford Apartments since 2001. He is Latinx; his primary language is Spanish. The members of his household span in age between 44 and 50. The household is low-income.

12.     Plaintiff Eduardo Jarquin, 56, has rented and occupied Unit 100 in the 727 Mariposa Building since 2010. He is Latinx; his primary language is Spanish. The members of his household span in age between 22 and 56. The household is low-income.

13.     Plaintiff Alvaro Isidro, 50, has rented and occupied Unit 108 in the 727 Mariposa Building since 2005. He is Latinx; his primary language is Zapotec. The members in his household span in age between 5 and 50; two members of his household are minor children. The household is low-income.

14.    Plaintiff Rosa Lily Pineda, 53, has rented and occupied unit 304 in the 727 Mariposa Building since 2010. She is Latinx; her primary language is Spanish. The members of her household span in age between 13 and 53; two members of her household are minor children. The household is low-income.

15.    Plaintiff Francis Yaqui, 43, has rented and occupied Unit 307 in the 727 Mariposa Building since 2009. She is Latinx; her primary language is Spanish.  The members of her household span in age between 11 and 43; three members of her household are minor children. The household is low-income.

16.    Plaintiff Marbarita Ortega, 45, has rented and occupied Unit A in the Western Apartments since 2015. She is Latinx; her primary language is Spanish. The members of her household span in age between 9 and 45; two members of her household are minor children. The household is low-income.

17.    Plaintiff Rebeca Sanchez, 35, has rented and occupied two dwelling units at the Western Apartments since 2008. She is Latinx; her primary language is Spanish. The members of her household span in age between 2 and 35; three members of her household are minor children. The household is low-income.

18.    Plaintiff Teresa Morales, 45, rented and occupied Unit 402 at the Western Apartments between 2010 and 2020. She is Latinx; her primary language is Spanish. The members of her household span in age between 12 and 45; two members of her household are minor children, and one minor child has a disability. The household is low-income.

19.    Plaintiff Marcela Aparicio, 45, has rented and occupied dwelling units at the Western Apartments since 2014. She is Latinx; her primary language is Spanish. The members of her household span in age between 9 and 55; two members of her household are minor children. The household is low-income.

20.    Plaintiff Donaldo Jimenez, 44, occupied two dwelling units at the Western Apartments between 1992 and 2020. He is Latinx; his primary language is Spanish. The members of his household span in age between 12 and 44; one

1    member of his household is a minor child.  The household is low-income.[1]

2    **B.  Defendants**

3       21.    Defendant K3 Holdings LLC is a Delaware limited liability company.

4    Since October 20, 2016, it has been registered as a foreign limited liability

5    company with the California Secretary of State. Its principal executive office is

6    located at 2575 El Presidio Street, Long Beach, California. Defendants Nathan

7    Kadisha and Michael Kadisha are the sole managers/members of K3 Holdings

8    LLC.

9       22.    Defendant K3 Manager LLC is a Delaware limited liability company.

10   Since October 20, 2016, it has been registered as a foreign limited liability

11   company with the California Secretary of State. Its principal executive offices are

12   located at 2575 El Presidio Street in Long Beach and 345 North Maple Drive in

13   Beverly Hills.  Its sole manager/member is defendant K3 Holdings LLC.

14      23.    Defendant Western 19 LLC, formerly1057 S Western LLC, is a

15   Delaware limited liability company. Its predecessor has been registered as a

16   foreign limited liability company with the California Secretary of State since

17   February 13, 2019. Its principal executive office is located at 345 North Maple

18   Drive, Beverly Hills, California. Its sole manager/member is defendant K3

19   Manager LLC. Since January 18, 2019, defendant Western 19 LLC, originally as

20   1057 S Western LLC, has held title as the sole owner of the apartment building

21   located at 1057 South Western Avenue in Los Angeles.

22      24.    Defendant Oxford 19 LLC is a Delaware limited liability company.

23   Since August 28, 2019, it has been registered as a foreign limited liability

24   company with the California Secretary of State.  Its principal executive office is

25   located at 345 North Maple Drive, Beverly Hills, California. Its sole

26   _____

27   [1]In this complaint, the tenant plaintiffs – Angel, Pinto, Ahumada, Tzunun,
     Juarez, Bolanos, Lopez Juarez, Isidro, Jarquin, Pineda, Yaqui, Ortega, Sanchez,
28   Morales, Aparicio, Jimenez – are collectively identified as "individual plaintiffs."

manager/member is defendant K3 Manager LLC. Since October 22, 2019, defendant Oxford 19 LLC has held title as the sole owner of the apartment building located at 975, 979, and 985 South Oxford Avenue in Los Angeles.

25. Defendant Kenmore 20 LLC is a Delaware limited liability company. Since March 13, 2020, it has been registered as a foreign limited liability company with the California Secretary of State.  Its principal executive office is located at 345 North Maple Drive, Beverly Hills, California. Its sole manager/member is defendant K3 Manager LLC. Since June 30, 2020, defendant Kenmore 20 LLC has held title as the sole owner of the apartment building located at 941 South Kenmore Street in Los Angeles. (Since September 11, 2020, it has also held title as the sole owner of the apartment building located at 915 South Kenmore Street in Los Angeles.)

26. Defendant Mariposa 20 LLC is a Delaware limited liability company. Since February 24, 2020, it has been registered as a foreign limited liability company with the California Secretary of State. Its principal executive office is located at 345 North Maple Drive, Beverly Hills, California. Its sole manager/member is defendant K3 Manager LLC. Since July 9, 2020, defendant Mariposa 20 LLC has held title as the sole owner of the apartment building located at 727 South Mariposa Avenue in Los Angeles.

27. Defendant Ave 55 19 LLC is a Delaware limited liability company. Since August 28, 2019, it has been registered as a foreign limited liability company with the California Secretary of State. Its principal executive office is located at 345 North Maple Drive, Beverly Hills, California. Its sole manager/member is defendant K3 Manager LLC. Since October 8, 2019, defendant Ave 55 19 LLC has held title as the sole owner of the apartment building located at 249 South Avenue 55 in Los Angeles.

28. Acting through various corporate entities, defendants Nathan Kadisha and Michael Kadisha, brothers, own, operate, manage, and control the subject

1   apartment buildings at the center of this action. The Kadisha brothers are

2   responsible for the establishment, implementation, enforcement, and effect of the

3   unlawful housing practices alleged in this complaint.  The Kadisha brothers

4   employ a wide variety of agents, contractors, and employees to assist in the

5   ownership, operation, and control of the subject apartment buildings at the center

6   of this action.

7          29.    Defendant Angel Escobar, an employee or agent of each defendant,

8   was one of the Kadisha brothers' agents responsible for the execution of K3's

9   unlawful housing practices.

10         30.    Each defendant is the agent, principal, partner, or co-conspirator of

11  each other defendant, including its officers, employees, contractors, and agents.

12  Each defendant is directly or vicariously liable for the unlawful housing practices

13  alleged in this complaint.[2]

14                        **III.   FACTUAL ALLEGATION**

15                **A. K3's Pattern or Practice of Unlawful Practices**

16         31.    Since at least 2019, K3 has engaged in a pattern or practice of

17  unlawful housing practices committed for the purpose and with the effect of

18  discriminating against vulnerable  Latinx households on the basis of race, color,

19  ethnicity, national origin, familial status, age, disability, or source of income.

20  K3 commits these discriminatory and unlawful housing practices pursuant to its

21  business model designed to execute a gentrification strategy for profit.

22         32.    K3's gentrification strategy unfolds in three steps. First, K3 targets

23  Latinx-occupied apartment buildings in the Koreatown and Highland Park

24  neighborhoods for acquisition.  Second, K3 removes Latinx families from newly

25  acquired building through unlawful means. Third, K3 upgrades vacated dwellings,

26  which it exclusively markets to younger, whiter, richer, childless, nondisabled

27  _____

28         [2]As used in this complaint, "K3" refers to defendants collectively.

prospective tenants. The upshot of K3's gentrification strategy is the potential for huge profits through the production and resale of rental housing that caters to a new group of tenants selected on the basis of race, color, ethnicity, national origin, familial status, age, disability, or source of income.

33. **Step One: K3 targets LA's most vulnerable renters for displacement.** For K3's gentrification strategy to work, it must gain control of apartment buildings where the racial turnover of tenants generates the most profits with the least resistance. To effectuate that objective, K3 focuses on the Koreatown and Highland Park neighborhoods.

34. Since 2019, K3 has targeted older apartment buildings occupied by low-income Latinx families in the Koreatown and Highland Park neighborhoods for acquisition and gentrification, including the following:

| *LA City Address* | *Units* | *Date K3 Acquired* | *Owner:  K3 LLC* |
|---|---|---|---|
| 3715 W 1st St | 55 | 4/29/2021 | 3715 W 1st Street LLC |
| 861 Fedora St | 39 | 1/19/2017 | 861 Fedora LLC |
| 247 S Alexandria Ave | 27 | 9/21/2021 | 247 S Alexandria LLC |
| 5406 Lexington Ave | 42 | 12/10/2021 | 5406 Lexington LLC |
| 414 S Manhattan Pl | 21 | 10/30/2020 | Manhattan 20 LLC |
| 410 S Manhattan Pl | 21 | 10/30/2020 | Manhattan 20 LLC |
| 200 S Kenmore Ave | 48 | 8/31/2020 | Kenmore Il 20 LLC |
| 727 S Mariposa Ave | 40 | 7/27/2020 | Mariposa 20 LLC |
| 960 S Oxford Ave | 73 | 6/8/2021 | 960 S Oxford LLC |
| 249 S Avenue 55 | 40 | 10/22/2019 | Ave 55 19 LLC |
| 5635 Monte Vista St | 31 | 10/17/2019 | Monte Vista 19 LLC |
| 1057 S Western Ave | 76 | 2/19/2019 | Western 19 LLC |
| 974 S Gramercy Pl | 38 | 8/5/2021 | 974 S Gramercy LLC |

| LA City Address | Units | Date K3 Acquired | Owner:  K3 LLC |
|---|---|---|---|
| 975 S Oxford Ave | 20 | 10/28/2019 | Oxford 19 LLC |
| 979 S Oxford Ave | 20 | 10/28/2019 | Oxford 19 LLC |
| 985 S Oxford Ave | 20 | 10/28/2019 | Oxford 19 LLC |
| 509 S Manhattan Pl | 63 | 2/5/2021 | Manhattan 20 LLC |
| 915 S Kenmore Ave | 18 | 10/14/2020 | Kenmore 20 LLC |
| 941 S Kenmore Ave | 24 | 7/7/2020 | Kenmore 20 LLC |
| 207 N Oxford Ave | 32 | 1/15/2020 | Oxford 20 LLC |
| 312 W Avenue 37 | 40 | 8/30/2019 | Highland 19 LLC |
| 437 N Ardmore Ave | 69 | 8/30/2019 | Ardmore 19 LLC |
| 3048 W 12th St | 16 | 6/20/2019 | 12th Street 19 LLC |
| 520 S Mariposa Ave | 48 | 8/16/2019 | 520 Mariposa LLC |
| 130 S Alexandria Ave | 30 | 3/1/2019 | 130 Alexandria LLC |
| 5200 Hollywood Blvd | 20 | 8/22/2016 | 5200 Hollywood LLC |
| 2933 W 8th St | 40 | 5/22/2019 | 2933 8th LLC |
| 808 S Hobart Blvd | 49 | 4/30/2021 | 808 S Hobart LLC |
| 260 S Mariposa Ave | 40 | 4/29/2021 | 260 S Mariposa LLC |
| 515 S St Andrews Pl | 40 | 04/29/2021 | 515 S St Andrews LLC |

35.     The concentration of low-income, Latinx renters in Koreatown is key to K3's gentrification strategy. Located west of downtown and MacArthur Park in central Los Angeles, Koreatown is one of the most diverse and poorer parts of Los Angeles. The neighborhood's name stems more from its recent history than its demography. The combined effects of White flight, depressed real estate prices, and the Immigration and Nationality Act of 1965, attracted South Korean investors to the area. (Park, "The Contested Nexus of Los Angeles Koreatown: Capital

Restructuring, Gentrification, and Displacement," Amerasia Journal, pp. 126-150
[2008].)  By the 1970s, Korean business dominated stretches of Olympic
Boulevard and 8th Street. Despite its name, more than half of Koreatown's
residents are Latinx.

36.    While average private market rents are lower in Koreatown ($1,895)
than other areas of Los Angeles (Rent Café, https://www.rentcafe.com/apartments
-for-rent/us/ca/los-angeles [last visited Jan. 31, 2022), Koreatown renters are far
more rent-burdened compared to other LA renters. Of the top ten rent-burdened
neighborhoods in Los Angeles, Koreatown ranks fourth. (Affordable Housing in
Los Angeles [McKinsey Global Institute 2019].) Of the 37,200 households located
in Koreatown, 31,100 pay more than 30% for housing, while 24,500 pay more
than 50%. (*Id*.)  This relationship between lower rents but higher rent-burden is a
result of the significantly lower household income for most Koreatown rental
households (*id*.), which consist of low-income households of color (92%), the
majority of whom are Latinx families (54%). (Mapping LA [LA Times, 2015].)

37.    The concentration of low-income, Latinx renters in Highland Park is
also key to K3's gentrification strategy. Located northeast of downtown, Highland
Park is one of the oldest residential neighborhoods in central Los Angeles,
covering 3.5 square miles and wedged between South Pasadena, Mount
Washington, and Eagle Rock. Following construction of the Arroyo Seco Parkway
in 1940, most White families moved and were replaced by Latinx families, a trend
that continued into the 2000s. (Bogado, "Dispatch from Highland Park:
Gentrification, Displacement and the Disappearance of Latino Businesses,"
Colorlines (2015).)

38.     The neighborhood's 60,000 residents comprise 16,500 households. (LA Times, "Highland Park Profile," [2017].) At its height in 2010, 95% of Highland Park's residents were Latinx. (LA Times, "Latino Neighborhoods," [2020].) Today, 72% of the neighborhood's residents are Latinx; 45% are foreign born. (Id.) The neighborhood is poor. It has the highest concentration of households in LA earning less than $40,000 per year-many consisting of single parents with minor children. (Id.) Sixty percent of Highland Park's households are renters, most of whom are Latinx families. (Id.) While average private market rents are lower in Highland Park ($1,813) than most other areas of Los Angeles (https://www.rentcafe.com/apartments-for-rent/us/ca/los-angeles), Highland Park renters are more rent-burdened than most LA renters. More than half of Highland Park residents pay in excess of 30% of their income in rent. (USC Sol Price, Rising Rent Burden in Los Angeles (2021).)

39.     **Step Two: Removing Latinx families from their homes.** After gaining control of an apartment building, K3 engages in a wide variety of unlawful practices to oust existing Latinx families from their dwellings, including threats of eviction, harassment, intimidating and deceiving tenants to execute unlawful buyout agreements, refusing to repair uninhabitable conditions, creating worse conditions through unpermitted construction, retaliation, and charging unlawful rents.

40.     **Step Three: Renovation and marketing to whiter, richer, younger, childless, nondisabled tenants.** Once K3 ousts Latinx families from their homes, it renovates emptied units, raises the rents, and markets the renovated units exclusively online and in English and in a manner calculated to exclude Latinx families and attract young, white, childless, nondisabled professionals.

-12-

**B.  K3 Buildings and Individual Plaintiffs**

41.    **Western Apartment Building.**  Constructed in 1935, the Western Apartment Building is located in Koreatown at 1057 South Western Avenue; it contains 76 dwelling units.  On January 18, 2019, K3 purchased the building for $12,560,000. It holds title as the sole owner of the property in the name of defendant Western 19 LLC. The building is subject to the City's rental stabilization regulation, commonly known as LARSO.

42.    Since acquiring the Western Apartment Building, K3 has aggressively pursued its gentrification strategy to flip the racial makeup of that building by committing the following unlawful practices against Latinx households, including plaintiffs Marbarita Ortega, Rebeca Sanchez, Teresa Morales, Marcela Aparicio, and Donaldo Jimenez:

a.    Targeting Latinx families, including Ortega, Sanchez, Morales, Aparicio, and Jimenez, for unlawful and excessive rents;

b.    Targeting Latinx families, including Ortega, Sanchez, Morales, Aparicio, and Jimenez, with threats of eviction for their homes;

c.    Renting dwellings to Latinx families, including Ortega, Sanchez, Morales, Aparicio, and Jimenez, that K3 knew were unsafe and unsanitary and uninhabitable;

c.    Failing or refusing to make timely repairs to conditions known by K3 to be unsafe and unsanitary in dwellings occupied by Latinx families, including Ortega, Sanchez, Morales, Aparicio, and Jimenez;

d.    Knowingly creating unsafe and unsanitary conditions in dwellings occupied by Latinx families, including Ortega, Sanchez, Morales, Aparicio,

and Jimenez, by engaging in unpermitted construction without a city-mandated remediation plan;

e.      Presenting defective buyout agreements (commonly known as "cash-for-keys agreements") and demanding that Latinx tenants, including Sanchez, Morales, Aparicio, and Jimenez, sign those defective agreements to surrender their homes;

f.      Coercing Latinx tenants, including Sanchez and Jimenez, to execute K3s defective buyout agreement through the use of threats, intimidation, and deceit;

g.      Coercing Latinx tenants, including Sanchez and Jimenez, to relocate to other dwelling units in the Western building, and mandating that they execute new rental agreement under which they are charged higher rents and additional fees and charges; and,

h.      Threatening and retaliating against Latinx tenants, including Morales and  Aparicio, who refused to sign K3's defective buyout agreement.

43.      After removing Latinx families from their homes in the Western building, K3 renovated the vacated units, which it exclusively advertised online and only in English.

44.      K3's advertisement of newly renovated dwellings in the Western building is calculated to attract richer, whiter, younger, childless, nondisabled tenants to occupy dwellings formerly occupied by low-income, Latinx families. For example, an advertisement accessed on September 23, 2021, on *Westsiderentals.com* lists two 400-450 sq. ft. studios available for rent at 1057 S Western Ave, now rebranded as the "Western Towers Apartments," for $1425-$1450 monthly. It describes the units as "renovated Artist Studio. Exposed Brick,"

and highlighting how the units "truly capture the feel of an Artists home," with close proximity to "restaurants and nightlife."

45.    **Kenmore Apartment Building.** Constructed in 1923, the Kenmore Apartment Building is located in Koreatown at 941 South Kenmore Avenue; it contains 24 dwelling units. On June 30, 2020, K3 purchased the building for $3,850,038. It holds title as the sole owner of the property in the name of defendant Kenmore 20 LLC. The building is subject to the LARSO.

46.    Since acquiring the Kenmore Apartment Building, K3 has aggressively pursued its gentrification strategy to flip the racial makeup of that building by committing the following unlawful practices against Latinx households, including plaintiffs Maria Tzunun, Jose Antonio Juarez, and Sara Bolaños:

a.    Targeting Latinx families, including Tzunun, Juarez, and Bolaños, for unlawful and excessive rents;

b.    Targeting Latinx families, including Tzunun, Juarez, and Bolaños, with threats of eviction for their homes;

c.    Renting dwellings to Latinx families, including Tzunun, Juarez, and Bolaños, that K3 knew were unsanitary and unsafe for human habitation;

c.    Failing or refusing to make timely repairs to conditions known by K3 to be unsafe and unsanitary in dwellings occupied by Latinx families, including Tzunun, Juarez, and Bolaños;

d.    Knowingly creating unsafe and unsanitary conditions in dwellings occupied by Latinx families, including Tzunun, Juarez, and Bolaños, by engaging in unpermitted construction without a city-mandated remediation plan;

e.      Presenting defective buyout agreements, and demanding that Latinx tenants, including  Tzunun, Juarez, and Bolaños, sign those defective agreements to surrender their homes; and,

f.      Coercing Latinx tenants to execute K3's defective buyout agreement through the use of threats, intimidation, and deceit; and,

g.      Threatening Latinx tenants, including Tzunun, Juarez, and Bolaños, who refused to sign K3's defective buyout agreement.

47.    After removing Latinx families from their homes in the Kenmore building, K3 renovated the vacated units, which it exclusively advertised online and only in English.

48.    K3's advertisement of newly renovated dwellings in the Kenmore building is calculated to attract richer, whiter, younger, childless, nondisabled tenants to occupy dwellings formerly occupied by low-income, Latinx families. For example, an advertisement accessed on September 23, 2021, posted on Apartments.com lists one unit as "available soon" at 941 Kenmore, now rebranded as the "The Kenmore @ San Marino."  The unit, a "junior" one-bedroom, is 500-600 sq ft and listed at $1525- $1575, describing the updated appliances and recent renovations to the units as "fun and fresh!" A sidebar on the webpage notes that the contact for this property only speaks English.

49.    **Oxford Apartment Building.** Constructed in 1922, the Oxford Apartment Building is located in Koreatown at 975 South Oxford Avenue; it contains 20 dwelling units.  On October 22, 2020, K3 purchased the building, along with two adjacent apartment buildings at 797 and 985 South Oxford for

$9,595,000. It holds title as the sole owner of the property in the name of defendant Oxford 19 LLC. The building is subject to the LARSO.

50.    Since acquiring the Oxford Apartment Building, K3 has aggressively pursued its gentrification strategy to flip the racial makeup of that building by committing the following unlawful practices against Latinx households, including plaintiff Ermelindo Juarez Lopez:

a.    Targeting Latinx families, including Lopez, for unlawful and excessive rents;

b.    Targeting Latinx families, including Lopez, with threats of eviction for their homes;

c.    Renting dwellings to Latinx families, including Lopez, that K3 knew were unsanitary and unsafe for human habitation;

c.    Failing or refusing to make timely repairs to conditions known by K3 to be unsafe and unsanitary in dwellings occupied by Latinx families, including Lopez;

d.    Knowingly creating unsafe and unsanitary conditions in dwellings occupied by Latinx families, including Lopez, by engaging in unpermitted construction without a city-mandated remediation plan;

e.    Presenting defective buyout agreements and demanding that Latinx tenants, including  Lopez, sign those defective agreements to surrender their homes;

f.    Coercing Latinx tenants to execute K3's defective buyout agreement through the use of threats, intimidation, and deceit; and,

g.    Threatening and retaliating against Latinx tenants, including Lopez, who refused to sign K3's defective buyout agreement.

51.     After removing Latinx families from their homes in the Oxford
building, K3 renovated the vacated units, which it exclusively advertised online
and only in English.

52.     K3's advertisement of newly renovated dwellings in the Oxford
building was calculated to attract richer, whiter, younger, childless, nondisabled
tenants to occupy dwellings formerly occupied by low-income, Latinx families.
For example, an advertisement accessed on September 23, 2021, lists one studio
apartment available at The Oxford Apartments, now rebranded as "The Oxford @
Olympic." The apartment is 400 sq ft and available for $1,195, a price which
includes an offered "summer special" of "four weeks off through a 13-month
lease." The description notes: "New ownership bringing great amenities to the
building. Awesome studio units for someone looking to explore Koreatown and
pay a fair rent for a clean/renovated building!!" and highlights the building's
proximity to "restaurants, and nightlife."

53.     **Mariposa Apartment Building.** Constructed in 1925, the Mariposa
Apartment Building is located in Koreatown at 727 South Mariposa Ave; it
contains 40 dwelling units. On October 22, 2020, K3 purchased the building for
$6,550,065. It holds title as the sole owner of the property in the name of
defendant Mariposa 20 LLC. The building is subject to the LARSO.

54.     Since acquiring the Mariposa Apartment Building, K3 has
aggressively pursued its gentrification strategy to flip the racial makeup of that
building by committing the following unlawful practices against Latinx
households, including plaintiffs Eduardo Jarquin, Alvaro Isidro, Rosa Lily Pineda,
Francis Yaqui:

a.     Targeting Latinx families, including Jarquin, Isidro, Pineda, and Yaqui, for unlawful and excessive rents;

b.     Targeting Latinx families, including Jarquin, Isidro, Pineda, and Yaqui, with threats of eviction for their homes;

c.     Renting dwellings to Latinx families, including Jarquin, Isidro, Pineda, and Yaqui, that K3 knew were unsanitary and unsafe for human habitation;

c.     Failing or refusing to make timely repairs to conditions known by K3 to be unsafe and unsanitary in dwellings occupied by Latinx families, including Jarquin, Isidro, Pineda, and Yaqui;

d.     Knowingly creating unsafe and unsanitary conditions in dwellings occupied by Latinx families, including Jarquin, Isidro, Pineda, and Yaqui, by engaging in unpermitted construction without a city-mandated remediation plan;

e.     Presenting defective buyout agreements and demanding that Latinx tenants, including Jarquin, Isidro, Pineda, and Yaqui, sign those defective agreements to surrender their homes; and,

f.     Coercing Latinx tenants to execute K3's defective buyout agreement through the use of threats, intimidation, and deceit; and,

g.     Threatening Latinx tenants, including Jarquin, Isidro, Pineda, and Yaqui, who refused to sign K3's defective buyout agreement.

55.    After removing Latinx families from their homes in the Mariposa building, K3 renovated the vacated units, which it exclusively advertises online and only in English.

56.     K3's advertisement of newly renovated dwellings in the Mariposa building was calculated to attract richer, whiter, younger, childless, nondisabled tenants to occupy dwellings formerly occupied by low-income, Latinx families. For example, an advertisement accessed on *Apartments.com* on September 23, 2021, lists one available studio apartment at 727 S. Mariposa Ave. The listed studio is 475 sq ft and offered for $1,425 a month. The description advertises "NEW CABINETS, NEW BATHROOMS, NEW STAINLESS STEEL APPLIANCES, NEW FLOORS. Be the first person to move into these renovated units!!" The description further notes, "The building is located on a street that looks like New York City and the exposed brick in the unit creates a very charming ambiance." Free wi-fi is offered to new residents, and the building's proximity to night-life is highlighted.

57.     **The Ave 55 Apartment Building.** Constructed in 1961, the Ave 55 Apartment Building is located in Highland Park at 249 South Avenue 55 Avenue; it contains 40 dwelling units. On October 8, 2019, K3 purchased the building for $10,600,106. It holds title as the sole owner of the property in the name of defendant Ave 55 19 LLC.  The building is subject to the LARSO.

58.     Since acquiring the Mariposa Apartment Building, K3 has aggressively pursued its gentrification strategy to flip the racial makeup of that building by committing the following unlawful practices against Latinx households, including plaintiffs Alma Angel, Miguel Pinto, and Margarita Ahumada:

a.     Targeting Latinx families, including Angel, Pinto, and Ahumada, for unlawful and excessive rents;

b.      Targeting Latinx families, including Angel, Pinto, and Ahumada, with threats of eviction for their homes;

c.      Renting dwellings to Latinx families, including Angel, Pinto, and Ahumada, that K3 knew were unsafe and unsanitary for human habitation;

c.      Failing or refusing to make timely repairs to conditions known by K3 to be unsafe and unsanitary in dwellings occupied by Latinx families, including Angel, Pinto, and Ahumada;

d.      Knowingly creating unsafe and unsanitary conditions in dwellings occupied by Latinx families, including Angel, Pinto, and Ahumada, by engaging in unpermitted construction without a city-mandated remediation plan;

e.      Presenting defective buyout agreements and demanding that Latinx tenants, including Angel, Pinto, and Ahumada, sign those defective agreements to surrender their homes;

f.      Coercing Latinx tenants to execute K3's defective buyout agreement through the use of threats, intimidation, and deceit; and,

g.      Threatening Latinx tenants, including Angel, Pinto, and Ahumada, who refused to execute K3's defective buyout agreement.

59.      After removing Latinx families from their homes in the Mariposa building, K3 renovated the vacated units, which it exclusively advertises online and only in English.

60.      K3's advertisement of newly renovated dwellings in the Mariposa building is calculated to attract richer, whiter, younger, childless, nondisabled tenants to occupy dwellings formerly occupied by low-income, Latinx families. For example, an advertisement accessed on September 23, 2021, on

*Apartments.com* lists one available unit at 249 S. Ave. 55, now rebranded as The Avalon @ Highland Park. The unit, a one-bedroom, is 700 sq ft and listed at $1,995 per month. The advertisement describes the apartments as offering a "truly comfortable and modern experience." Residents are offered free high-speed internet. The advertisement notes the building's proximity to "an eclectic array of choices featuring coffee shops, boutiques, bars and restaurants." A sidebar on the webpage notes that the contact for this building only speaks English.

### C. Housing Rights Center

61.    Plaintiff Housing Right Center (HRC) provides fair housing services throughout Los Angeles. It diverts significant resources from a wide variety of its other fair housing programs to combat housing discrimination in the Koreatown and Highland Park neighborhood. HRC has invested significant resource to eliminate housing discrimination in these neighborhoods. On an annual basis, it typically receives and responds to more than 17,000 complaints by tenants reporting discrimination or state housing law violations. Where HRC uncovers systemic housing discrimination in Koreatown or Highland Park neighborhoods, it has sued to stop that discrimination and counteract its effects. *See e.g., Housing Rights Center v. Donald Sterling Corp.*, 274 F.Supp.2d 1129 (C.D. Cal. 2003); *Martinez v. Optimus Props.*, LLC, 2018 WL 6039875 (C.D. Cal. June 6, 2018). 230.

62.    Since K3 gained control of the apartment buildings at the center of this action, K3 tenants have complained to HRC. Starting in 2019, HRC received complaints from Latinx tenants at the Western Apartment that K3 was threatening tenants with eviction unless they vacated their homes pursuant to a buyout agreement.

63.    In August 2020, a Latinx tenant complained to HRC that since K3 took over the Mariposa Apartment Building, K3 agents continually entered her apartment while she was away at work and her children were home alone due to COVID school closures. Feeling harassed, the tenant asked K3 to limit its entry to time when she was at home, but K3 continued to enter her dwelling without permission using a master key.

64.    By September 2020, K3's bullying of tenants had escalated. Another Latinx tenant in the Mariposa Apartments reported to HRC:

> My apartment building was recently bought out by "Mariposa 20 LLC" about a month ago. . ... Last week a man named Angel representing the property management LLC went through the first and second floor of my building seeking to buyout tenants. There are four floors in the vicinity. The landlord said that he was going to come by my apartment to give me an offer. Angel has been threatening tenants with evictions if they don't sign. What's worse is that he's giving the Voluntary Eviction Contracts in a different language than their native tongue. (For instance, Spanish speaking tenants who don't really speak or understand English are given English contracts and English-speaking tenants are given Spanish contracts.)

65.    By October 2020, tenants reported that K3's pressure tactics had spread to other buildings. A Latinx tenant in the 941 Kenmore Apartments complained that K3 badgered her family to move from their home of 24 years. Another Latinx tenant, writing on behalf of long-term Latinx tenants in that same building, reported to HRC:

> I'm writing as a representative of my mother and several other tenants. They received a verbal notice of an eviction to occur in three months along with a

-23-

payment option. Most tenants and families have been affected by
COVID-19 due to the lack of work and the majority being susceptible to
COVID-19 since they are elderly. Some tenants have been living as a renter
in this property for a minimum of 15 years and there have been very few
renovations since living in this property.

66.     Meanwhile, in Highland Park, a Latinx tenant in the 5635 Monte
Vista building reported to HRC that K3 had served a three-day notice requiring the
tenant to quit the apartment he had rented since 1999. The tenant reported that he
had reported K3 to code enforcement to fix the uninhabitable conditions in his
apartment. He also reported that the landlord had refused to accept his rent, which
the tenant feared would be used as a pretext for his eviction.

### D.  Injuries and Relief to Plaintiffs

67.     As a proximate result of K3's pattern or practice of discriminatory and
unlawful housing practices, each individual plaintiff – Angel, Pinto, Ahumada,
Tzunun, Juarez, Bolanos, Lopez Juarez, Isidro, Jarquin, Pineda, Yaqui, Ortega,
Sanchez, Morales, Aparicio, Jimenez – has suffered loss of the value, use and
enjoyment of his or her dwelling, invasion of his or her private right of occupancy
and quiet enjoyment, constructive eviction from his or her dwelling, deprivation of
his or her fair housing rights, personal injuries including distress, humiliation, and
fear, and attendant bodily injuries. Accordingly, each individual plaintiff is
entitled to compensatory damages.

68.     As a proximate result of K3's pattern or practice of discriminatory and
unlawful housing practices, HRC has diverted its scarce resources to document,
investigate, organize, counsel, and refer the victims of K3's pattern or practice of
unlawful housing practice, which frustrates HRC's mission and requires HRC to

continue to divert its scarce resources to counteract the effects of K3's discriminatory and unlawful housing practices:

a. Specifically, K3's continuing unlawful conduct injures HRC by (a) undermining its education, counseling, and training programs designed to promote fair housing; (b) requiring it to divert scarce resources away from its usual activities and instead to devote substantial time to activities to identify and counteract K3's discrimination; (c) frustrating its mission of increasing fair and equal access to housing; (d) frustrating its mission to eliminate segregation in the communities it serves; and (e) harming the community that it serves; and,

b. By requiring HRC to expend substantial time and resources identifying and counteracting K3's unlawful conduct, Defendants have harmed HRC by forcing it to divert scarce resources away from its usual education, training, counseling and capacity-building programs and activities to programs and activities to identify and counteract K3's discriminatory housing practices, including an investigation involving fair housing testing. Because HRC has limited resources, the time and resources it spent to identify and counteract K3's policies and practices meant that it had fewer resources to devote to its usual education, training, counseling and capacity-building activities, causing HRC to delay, suspend or forgo other activities to advance its mission, including the opportunities expanding its outreach program to include schools; developing a media program to advertise on local radio stations; writing articles on fair housing, developments in fair housing and HRC's services for social service agencies' newsletters and local and national media; applying for new grants and funding sources; attending conferences; engaging in professional staff development; providing additional landlord-tenant and fair housing counseling; monitoring

-25-

additional properties for compliance with fair housing laws and executing new fair

housing advocacy projects or investigations.  Despite these lost opportunity costs,

HRC has devoted resources to counteracting K3's discrimination because, if left

unaddressed, K3's discriminatory policies would have a significant, lasting,

harmful effect on HRC's mission, programs and activities, and the communities

and the constituents it serves.

           c.      To address and attempt to counteract the effects of K3's

discriminatory conduct, HRC will continue to divert its resources to counteract the

effects of that discrimination, including community outreach and public efforts to

raise awareness of discriminatory practices related to displacement and

gentrification. That diversion and expenditure of financial resources and staff

time, include, but are not limited to: time and costs associated with drafting and

distributing educational materials related to discriminatory displacement and

gentrification; planning, drafting, and presenting materials for trainings to

non-profit organizations, media outlets, and public service advertisements related

to discriminatory displacement and gentrification; and preparing counteractive

strategies specifically targeted toward addressing the impact of K3's unlawful

behavior.

           d.      Thus, until remedied, K3's unlawful and discriminatory actions

will continue to injure HRC by, among other things:

           •      Interfering with its efforts and programs intended to bring

about equal opportunity in housing;

           •      Requiring the commitment of scarce resources, including

substantial staff time and resources, to counteract K3's discriminatory

conduct, thus diverting resources away from HRC's usual programs and activities, such as education, outreach, and counseling;

•      Frustrating HRC's mission and purpose of promoting the equal availability of housing to all persons without regard to any protected category, including national origin, race, alien status, ancestry and perceived immigration status; and,

•      Frustrating HRC's mission and purpose of promoting integration and eliminating segregation in the communities HRC serves.

69.    The unlawful and discriminatory acts and practices alleged in this complaint were intentionally, knowingly, and maliciously committed by K3, including its reckless disregard for each plaintiff's rights under federal, state and law laws.

70.    There now exists an actual controversy between the parties regarding duties under federal and state laws. Accordingly, each plaintiff is entitled to declaratory relief under their federal and state law claims including, but not limited to, 28 U.S.C. § 2201 as well as Rule 57 of the Federal Rules of Civil Procedure.

71.    Unless enjoined, K3 will continue to engage in the unlawful acts and the pattern or practice of discrimination described in this complaint. Plaintiffs have no adequate remedy at law. Plaintiffs are now suffering and will continue to suffer irreparable injury from K3's misconduct unless relief is provided by this Court. Accordingly, each plaintiff is entitled to injunctive relief under their federal and state law claims including, but not limited to, 28 U.S.C. § 2202 as well as Rule 65 of the Federal Rules of Civil Procedure.

# VI.  CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Fair Housing Act ~ By all Plaintiffs against all Defendants)

72.    Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

73.    Defendants, and each of them, injured each plaintiff in violation of the Fair Housing Act by committing the following discriminatory housing practices:

a)    Denying a dwelling because of race, color, disability, familial status, or national origin in violation of 42 U.S.C. § 3604(a), including but not limited to:

    i)    Using different qualification criteria or applications, or rental standards or procedures because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.60(b)(4);

    ii)    Evicting or attempting to evict tenants because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.60(b)(5); or,

    iii)    Subjecting a person to harassment because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.60(b)(7);

b)    Otherwise making unavailable a dwelling because of race, color, disability, familial status, or national origin in violation of 42 U.S.C. § 3604(a), including but not limited to:

    i)    Restricting or attempting to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, renting a dwelling so as to perpetuate, or tend to perpetuate, segregated

housing patterns, or to discourage or obstruct choices in a community, neighborhood, or building, because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.70(a);

ii)    Engaging in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons, because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.70(b);

iii)    Discouraging any person from renting a dwelling because of race, color, disability, familial status, or national origin, or because of the race, color, disability, familial status, or national origin, of persons in a community, neighborhood, or building, 24 C.F.R. § 100.70(c)(1);

iv)    Discouraging the rental of a dwelling because of race, color, disability, familial status, or national origin, by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling or of a community, neighborhood, or building, 24 C.F.R. § 100.70(c)(2); or,

v)    Communicating to any prospective renter that he or she would not be comfortable or compatible with existing or future residents of a community, neighborhood or building because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.70(c)(3);

c)    Discriminating against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, disability, familial status, or

-29-

national origin in violation of 42 U.S.C. § 3604(b), including but not limited

to:

      i)     Using different provisions in leases, such as those relating to

rental charges, security deposits and the terms of a lease, because of

race, color, disability, familial status, or national origin, 24 C.F.R. §

100.65(b)(1);

      ii)    Failing or delaying maintenance or repairs of sale or rental

dwellings because of race, color, disability, familial status, or national

origin, 24 C.F.R. § 100.65(b)(2);

      iii)   Limiting the use of privileges, services or facilities associated

with a dwelling because of race, color, disability, familial status, or

national origin of a tenant or a person associated with him or her, 24

C.F.R. § 100.65(b)(4); or,

      iv)   Subjecting a person to harassment because of race, color,

disability, familial status, or national origin that has the effect of

imposing different terms, conditions, or privileges relating to the

rental of a dwelling or denying or limiting services or facilities in

connection with the rental of a dwelling, 24 C.F.R. § 100.65(b)(7);

d)    Making, printing or publishing or causing to be made, printed, or

published any notice, statement, or advertisement, with respect to the rental

of a dwelling that indicates any preference, limitation, or discrimination

based on race, color, disability, familial status, or national origin or an

intention to make any such preference, limitation, or discrimination in

violation of 42 U.S.C. § 3604(c), including but not limited to:

i)      Using words, phrases, photographs, illustrations, symbols or forms which convey that dwellings are available or not available to a particular group of persons because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.75(c)(1);

ii)     Expressing to agents, brokers, employees, prospective renters or any other persons a preference for or limitation on any renter because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.75(c)(2); or,

iii)    Selecting media or locations for advertising the rental of dwellings which deny particular segments of the housing market information about housing opportunities because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.75(c)(3);

e)      Providing inaccurate or incomplete information about the availability of dwellings for rental in violation of 42 U.S.C. § 3604(d), including but not limited to:

i)      Limiting information, by word or conduct, regarding suitably priced dwellings available for inspection or rental because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.80(b)(4);

f)      Inducing or attempting to induce, for profit, any person to rent any dwelling by representations regarding the entry or prospective entry into the neighborhood or building of persons of a particular of race, color, disability, familial status, or national origin in violation of 42 U.S.C. § 3604(e); or,

g)      Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or

enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the federal Fair Housing Act in violation of 42 U.S.C. § 3617, including but not limited to:

  i)  Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the rental of a dwelling, because of race, color, disability, familial status, or national origin, 24 C.F.R. § 100.400(c)(1);

  ii)  Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, disability, familial status, or national origin, of such persons, or of visitors or associates of such persons, 24 C.F.R. § 100.400(c)(2); or,

  iii)  Retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority, 24 C.F.R. § 100.400(c)(6).

74.  Plaintiffs will prove that each defendant is liable for the commission of these discriminatory housing practices, 24 C.F.R. § 100.7, under either the disparate treatment or disparate impact theories or both, 24 C.F.R. § 100.5. Plaintiffs will also prove that each defendant is liable for the commission of the discriminatory housing practices in violation of 42 U.S.C. § 3604(c) pursuant to the ordinary reader or listener standard.

75.  Accordingly, each plaintiff is an "aggrieved person," 42 U.S.C. § 3602(i), entitled to relief, 42 U.S.C. § 3613(a), according to proof, 42 U.S.C. § 3613(c).

///

**SECOND CLAIM FOR RELIEF**

**(Violations of the Fair Employment and Housing Act:  By all Plaintiffs against all Defendants)**

76.     Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

77.     Defendants, and each of them, injured each plaintiff in violation of the Fair Employment and Housing Act by committing each of the discriminatory housing practices alleged in violation of the federal Fair Housing Act, supra  102, incorporated herein by reference, Cal. Govt. Code § 12955.6, and, in addition, the following:

a)     Discriminating against or harassing any person because of the race, color, national origin, ancestry, familial status, source of income, or disability of that person in violation of Cal. Govt. Code § 12955(a);

b)     Making, printing or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, national origin, ancestry, familial status, source of income, or disability or an intention to make that preference, limitation, or discrimination in violation of Cal. Govt. Code § 12955(c);

c)     Violating the Unruh Civil Rights Act, Cal. Civ. Code § 51, by discriminating against any person on the basis of race, color, national origin, ancestry, familial status, source of income, or disability in violation of Cal. Govt. Code § 12955(d);

d)     Harassing, evicting, or otherwise discriminating against any person in the rental of dwellings when the owner's dominant purpose is retaliation

-33-

against a person who has opposed practices unlawful under Cal. Govt. Code § 12955, informed law enforcement agencies of practices believed unlawful under Cal. Govt. Code § 12955, testified or assisted in any proceeding under this part, or has aided or encouraged a person to exercise or enjoy the rights secured by the Fair Employment and Housing Act in violation of Cal. Govt. Code § 12955(f);

e)       Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts or practices declared unlawful under Cal. Govt. Code § 12955, or attempting to do so in violation of Cal. Govt. Code § 12955(g);

f)       Inducing, for profit, any person to rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of persons of a particular race, color, national origin, ancestry, familial status, source of income, or disability in violation of Cal. Govt. Code § 12955(h);

g)       Otherwise making unavailable or deny a dwelling based on discrimination, Cal. Govt. Code § 12927(c)(1) because of race, color, national origin, ancestry, familial status, source of income, or disability in violation of Cal. Govt. Code § 12955(k);

h)       Discrimination through private land use practices, decisions, and authorizations because of race, color, national origin, ancestry, familial status, source of income, or disability, including but not limited any practice, decision, or authorization:

    i)       That denies, restricts, conditions, adversely impacts, or renders infeasible the enjoyment of residence, tenancy, or any other land use benefit related to housing opportunities, 2 C.R.R. § 12161(b)(1);

ii)     That makes housing opportunities unavailable or denies

dwellings to individuals or intended occupants of dwellings, 2 C.R.R.

§ 12161(b)(2);

iii)    That denies, restricts, conditions, adversely impacts, or renders

infeasible the use of privileges, services, or facilities associated with

housing opportunities or existing or proposed dwellings, or otherwise

makes unavailable such privileges, services or facilities, 2 C.R.R. §

12161(b)(5);

iv)     That denies, restricts, conditions, adversely impacts, or renders

infeasible the enjoyment of residence, tenancy, or any other land use

benefit related to residential use, or in connection with housing

opportunities or existing or proposed dwellings or otherwise makes

housing opportunities unavailable on the basis of an individual's or

individuals' ability to speak, read or understand the English language,

2 C.R.R. § 12161(b)(11); or

v)      That creates, increases, reinforces, or perpetuates segregated

housing patterns, independently of the extent to which it produces a

disparate effect on protected classes, 2 C.R.R. § 12161(b)(12); or

i)      Coercing, intimidating, threatening, or interfering with any person in

the exercise or enjoyment of, or on account of that person having exercised

or enjoyed, or on account of that person having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or protected

by the Fair Employment and Housing Act in violation of Cal. Govt. Code §

12955.7.

78.    Plaintiffs will prove that each defendant is liable, 2 C.C.R. § 12010, for the commission of these discriminatory housing practices under either the disparate treatment or disparate impact theories or both, Cal. Govt. Code § 12955.8.   Plaintiffs will also prove that each defendant is responsible for the commission of the discriminatory housing practices in violation of Cal. Govt. Code § 12955(c) pursuant to the ordinary reader or listener standard, 2 C.C.R. § 12010.

79.    Accordingly, each plaintiff is an "aggrieved person," Cal. Govt. Code § 12927(g), entitled to relief, Cal. Govt. Code § 12989.1, according to proof, Cal. Govt. Code § 12989.2.

## THIRD CLAIM FOR RELIEF

### (Unruh Civil Rights Act ~ By Individual Plaintiffs against all Defendants)

80.    Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

81.    Defendants, and each of them, injured each individual plaintiff in violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51, by discriminating in the operation of a business establishment against each of them on the basis of personal characteristics.   The individual plaintiffs will prove that each defendant is liable, 2 C.C.R. § 12010, for violation of the Unruh Civil Rights Act under a disparate treatment theory, 2 C.C.R. §§ 12005(l), 12040-12042.

82.    Accordingly, each individual plaintiff is an "aggrieved party" Cal. Civ. Code § 52(e), entitled to relief according to proof pursuant to Cal. Civ. Code § 52(a), including civil penalties for each statutory violation.

///

///

-36-

**FOURTH CLAIM FOR RELIEF**

**(Unlawful Business Practices, Cal. Bus. & Prof. Code ~ By all Plaintiffs
against all Defendants)**

83.    Plaintiffs reallege and incorporate by reference each preceding
paragraph herein.

84.    Defendants, and each of them, injured each plaintiff causing a loss of
money or property or both in violation of the Unfair Competition Law by
committing the following unfair or unlawful business practices in violation of Cal.
Bus. Prof. Code § 17200:

a)    Unfair or unlawful practices, including but not limited to, violation of
each of the federal, state and local statutory provisions alleged herein; or,

b)    Unfair or misleading advertisement, as alleged herein.

85.    Each of these unfair or unlawful business practices injured each
plaintiff, including the loss of money or property or both, within the meaning of
Cal. Bus. & Prof. Code § 17204.  Accordingly, each plaintiff is entitled relief
according to proof pursuant to Cal. Bus. & Prof. Code §§ 17204-17208.

**FIFTH CLAIM FOR RELIEF**

**(Tenant Harassment, Cal. Civ. Code ~ By Individual Plaintiffs against all
Defendants)**

86.    Plaintiffs reallege and incorporate by reference each preceding
paragraph herein.

87.    Defendants, and each of them, injured each individual plaintiff in
violation of Cal. Civ. Code § 1940.2 by committing one or more of the following
unlawful practices:

a)      Engaging in conduct that violates the Cal. Penal Code § 484 (Larceny);

b)      Engaging in conduct that violates the Cal. Penal Code § 518 (Extortion); or,

c)      Engaging in willful threats that interferes with a tenant's quiet enjoyment.

88.     Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to Cal. Civ. Code § 1940.2(b), including civil penalties for each violation.

## SIXTH CLAIM FOR RELIEF

### (Substandard Conditions, Cal. Civ. And Health & Safety Codes ~ By Individual Plaintiffs against all Defendants)

89.     Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

90.     Defendants, and each of them, injured each individual plaintiff in violation of Cal. Civ. Code §§ 1941, 1941.1, 1941.3, 1942.4, or 1942.5 by committing one or more of the following unlawful practices:

a)      Demanding or collecting rent for occupancy of a dwelling whose condition violated the requirements of Cal. Civil Code §§1941, 1941.1, or 1941.3 or Cal. Health and Safety Code §§ 17920.10 or 17920.3 or the common law duty of habitability;

b)      Retaliating for reporting a violation of Cal. Civil Code §§1941, 1941.1, or 1941.3 or Cal. Health and Safety Code §§ 17920.10 or 17920.3; or,

c)      Retaliating for lawfully and peaceably exercising any rights under the laws.

91.     Accordingly, each individual plaintiff is entitled relief according to proof pursuant to Cal. Civ. Code §§ 1942.4(b) or 19425(h), including civil penalties for each violation.

## SEVENTH CLAIM FOR RELIEF

### (Nuisance, Cal. Civ. Code ~ By Individual Plaintiffs against all Defendants)

92.     Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

93.     Defendants, and each of them, injured each individual plaintiff in violation of Cal. Civ. Code §§ 3479-3481 by committing one or more of the following unlawful acts:

a)      Creation and maintenance of a public nuisance in violation of Cal. Civ. Code §§ 3479-3480; or,

b)      Creation and maintenance of a public nuisance in violation of Cal. Civ. Code §§ 3479-3481.

94.     Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to Cal. Civ. Code §§ 3491, 3493, and 3501.

## EIGHTH CLAIM FOR RELIEF

### (Quiet Enjoyment, Cal. Civ. Code ~ By Individual Plaintiffs against all Defendants)

95.     Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

96.     Defendants, and each of them, injured each individual plaintiff in violation of Cal. Civ. Code § 1927 by committing one or more of the following

unlawful practices:

a)     Breach of the covenant of quiet enjoyment;

b)     Invasion of the private right of occupancy; or,

c)     Wrongful eviction.

97.    Accordingly, each individual plaintiff is relief according to proof pursuant to Cal. Civ. Code §§ 3281, 3333, and 3345.

## NINTH CLAIM FOR RELIEF

**(Negligence, Cal. Civ. Code ~ By Individual Plaintiffs against all Defendants)**

98.    Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

99.    Defendants, and each of them, injured each individual plaintiff in violation of Cal. Civ. Code § 1714 by committing one or more of the following negligent acts:

a)     Failing to exercise ordinary care in hiring, training, or supervising employees or agents under defendants' control; and,

b)     Failing to exercise ordinary care in operating, managing, or maintaining dwellings for rent to member of the public.

100.   Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to Cal. Civ. Code §§ 3281 and 3333.

## TENTH CLAIM FOR RELIEF

**(Rent Stabilization, Cal. Civ. Code ~ By Individual Plaintiffs against all Defendants)**

101.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

102.   Defendants, and each of them, injured each individual plaintiff in

violation of the Costa-Hawkins Act, as amended, Cal. Civ. Code § 1947.11 by committing one or more of the following unlawful practices:

a)     Charging rent in excess of the certified lawful rent ceiling; or,

b)     Failing or refusing to refund rent charged in excess of the certified lawful rent that may be charged.

103.   Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to Cal. Civ. Code § 1947.11(a).

**ELEVENTH CLAIM FOR RELIEF**

**(Unlawful Rent, LAMC ~ By Individual Plaintiffs against all Defendants)**

104.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

105.   Defendants, and each of them, injured each individual plaintiff in violation of Los Angeles Municipal Code (LAMC) Chap. XV, Art. 151 by committing the following unlawful practices:

a)     Demanding, accepting, or retaining the payment or rent in excess of the in excess of the maximum rent or maximum adjusted rent; or,

b)     Failing or refusing to adjust rents demanded, accepted, collected or retained commensurate with the reduction in services provided in connection with rental dwellings.

106.   Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to LAMC § 151.10.

**TWELFTH CLAIM FOR RELIEF**

**(Unlawful Construction, LAMC ~ By Individual Plaintiffs against all Defendants)**

107.   Plaintiffs reallege and incorporate by reference each preceding

-41-

paragraph herein.

108.    Defendants, and each of them, injured each individual plaintiff in violation of LAMC Chap. XV, Art. 152 by committing the following unlawful practices:

a)    Performing renovations of rental dwellings without the required permits issued by the LA Department of Building and Safety;

b)    Performing renovations of rental dwellings without the required Tenant Habitability Plan, issued by LAHICD;

c)    Performing renovations of rental dwellings in violation of a Tenant Habitability Plan; or,

d)    Failing or refusing to provide temporary housing during renovations.

109.    Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to LAMC § 152.07(E), including civil penalties for each violation.

### THIRTEENTH CLAIM FOR RELIEF

**(Unlawful Buyouts, LAMC ~ By Individual Plaintiffs against all Defendants)**

110.    Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

111.    Defendants, and each of them, injured each individual plaintiff in violation of LAMC Chap. XV, Art. 151 by committing the following unlawful practices:

a)    Failing or refusing to provide an agreement in the tenants' primary language;

b)    Failing or refusing to provide the requisite notices or disclosures;

c)    Failing or refusing to provide the tenant with a fully executed copy of the agreement; or,

d)      Failing or refusing to file executed agreements with LAHCID within 60 days of execution.

112.   Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to LAMC § 151.31(F), including civil penalties for each violation.

## FOURTEENTH CLAIM FOR RELIEF

### (Tenant Harassment, LAMC ~ By Individual Plaintiffs against all Defendants)

113.   Plaintiffs reallege and incorporate by reference each preceding paragraph herein.

114.   Defendants, and each of them, injured each individual plaintiff in violation of LAMC Chap. IV, Art. 5.3, by committing the following unlawful practices:

a)      Reducing or eliminating housing services required by a lease, contract or law;

b)      Failing to perform and timely complete necessary repairs and maintenance required by State, County, or local housing, health, or safety laws; or failure to follow applicable industry standards to minimize exposure to noise, dust, lead paint, asbestos, or other building materials with potentially harmful health impacts;

c)      Abuse of the right of access into a rental unit as established and limited by California Civil Code Section 1954, including entering or photographing portions of a rental unit that are beyond the scope of a lawful entry or inspection;

d)      Threatening a tenant, by word or gesture, with physical harm;

e)      Misrepresenting to a tenant that the tenant is required to vacate a

-43-

rental unit or enticing a tenant to vacate a rental unit through an intentional misrepresentation or the concealment or omission of a material fact;

f)    Threatening or taking action to terminate any tenancy including service of any notice to quit or other eviction notice or bringing action to recover possession of a rental unit based on facts which the landlord has no reasonable cause to believe to be true;

g)    Threatening to or engaging in any act or omission which interferes with the tenant's right to use and enjoy the rental unit or whereby the premises are rendered unfit for human habitation and occupancy;

h)    Refusing to acknowledge or accept receipt of lawful rent payments as set forth in the lease agreement or as established by the usual practice of the parties or applicable law;

i)    Engaging in an activity prohibited by federal, state, or local housing anti-discrimination laws;

j)    Retaliating, threatening, or interfering with tenant organizing activities, including forming or participating in tenant associations and unions; or,

k)    Interfering with a tenant's right to privacy.

115.    Accordingly, each individual plaintiff is entitled to relief according to proof pursuant to LAMC § 45.35, including civil penalties for each violation.

## V.  RELIEF

Wherefore, plaintiffs, and each of them, pray for entry of a judgment:

116.    That preliminarily and permanently enjoin each unlawful practice alleged in this complaint barring defendants, including their partners, agents, employees, assignees, and all persons acting in concert or participating with them,

from violating the unlawful practices alleged herein;

117.   That preliminarily and permanently compels defendants, including their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to undertake affirmative steps necessary to remedy the effects of the illegal or discriminatory conduct alleged in this complaint and to prevent similar occurrences in the future;

118.   That declares that defendants, and each of them, violated the applicable provisions of federal, state, and local laws alleged in this complaint;

119.   That awards compensatory damages to each plaintiff, according to proof;

120.   That awards statutory damages or civil penalties to each plaintiff, according to proof;

121.   That award punitive damages to each plaintiff, according to proof;

122.   That awards reasonable attorneys' fees and costs of the suit to each plaintiff; and,

///

///

///

///

1    123.   That grant all such other relief to which any plaintiff may be entitled.

2                              Respectfully submitted,

3        Dated:   January 31, 2022.

4
5    LAW OFFICE OF CLAUDIA          HOUSING RIGHTS CENTER
     MEDINA
6                                   */s/ Zachary Frederick*
     */s/ Claudia Medina*          Zachary Frederick
7    Claudia Medina                zfrederick@housingrightscenter.org
     claudia@cmedinalawoffice.com  Rodney Leggett
8    811 Wilshire Boulevard, 17th Floor   rleggett@housingrightscenter.org
     Los Angeles, CA 90017         Javier Beltran
9    Tel: (213) 269-4001           jbeltran@housingrightscenter.org
                                    3255 Wilshire Blvd., Suite 1150
10   BRANCART & BRANCART           Los Angeles, CA  90010
                                    Tel.: (213) 387-8400
11   */s/ Christopher Brancart*
     Christopher Brancart
12   cbrancart@brancart.com
     Post Office Box 686
13   Pescadero, CA 94060
     Tel.: (650) 879-0141
14

15
                              Attorneys for Plaintiffs
16

17

18

19

20

21

22

23

24

25

26

27

28

                                    -46-